UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Donald D. Schatz and Beverly A. Schatz,<br><br>Plaintiff,<br><br>vs.<br><br>American Crystal Sugar Company,<br><br>Defendant. | Civil No. _____ |

## COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs Donald D. Schatz ("**Don**") and Beverly A. Schatz ("**Beverly**") (collectively referred to as "**Plaintiffs**"), by and through their undersigned legal counsel for their complaint alleges and shows to the Court as follows:

### PARTIES

¶ 1    Plaintiffs are citizens of North Dakota.

¶ 2    Defendant American Crystal Sugar Company ("**ACSC**") is a company formed under the laws of Minnesota with its principal place of business in the State of Minnesota. ACSC owned and operated a sugar beet plant in Drayton, North Dakota at all relevant times mentioned herein.

### JURISDICTION

¶ 3    This Court has diversity jurisdiction over this action because the Plaintiffs and ACSC are domiciled in different States and the amount in controversy exceeds $75,000.

¶ 4    Venue in this Court is proper because this district is where a substantial part of the events and omissions giving rise to the Plaintiffs' claim occurred.

### FACTS

¶ 5    Plaintiffs incorporates all previous paragraphs of this Complaint as if fully alleged herein.

¶ 6    Unless otherwise specified, the following allegations relate to an electrical shock incident at Defendant ACSC's sugar beet factory in Drayton, North Dakota on June 23, 2023.

¶ 7    Defendant ACSC hired Great Plains Technical Services ("Great Plains") to clean some of the factory's electrical equipment.

¶ 8    Great Plains employed Don to perform the cleaning services at the factory. Part of Don's cleaning process included dry ice blasting. Dry ice blasting uses compressed air to propel dry ice pellets at high speeds to remove contaminants from surfaces.

¶ 9    It is alleged and believed that Defendant ACSC's factory received electrical power from a main public power line. The power went through the factory's main power station and then disbursed throughout the factory's grounds in a complex electrical system.

¶ 10   The electrical system's design allowed Defendant ACSC to control power throughout the factory grounds. Defendant ACSC could isolate and de-energize the entire factory by shutting the power off at the factory's power station. In the alternative, Defendant ACSC could isolate and de-energize specific factory parts at any given time using various control equipment, including switchgears.

¶ 11   A switchgear is a collection of electrical devices that control, protect, and isolate power systems. A switchgear typically contains fuses, switches, circuit breakers, and other power conductors. Power beyond a switchgear is closed off when the switchgear's switch is turned to the off position.

¶ 12   Defendant ACSC had a series of switchgears throughout the factory to isolate and de-energize parts of the factory.

¶ 13   Defendant ACSC's ability to control power throughout the factory was an integral safety measure for Don's work at the factory.

¶ 14   Don's work on the date of the incident included cleaning the factory's switchgears.

¶ 15   The subject switchgear should have been isolated and de-energized by Defendant ACSC before Don began working due to the risk of shock injuries to Don.

¶ 16   Defendant ACSC's employees recklessly, carelessly, and negligently misrepresented to Don that they isolated and de-energized the subject switchgear before Don started working.

ACSC's personnel showed Don a switch on a <u>different</u> switchgear that was turned to the off position to misrepresent to Don that the subject switchgear was de-energized. ACSC's personnel recklessly, negligently, and carelessly overlooked other electrical pathways that fed power to the subject switchgear.

¶ 17   The switchgear was not isolated or de-energized as represented by ACSC before Don started working.

¶ 18   It is alleged and believed that the power from the switchgear arced to Don's cleaning equipment while Don was working.

¶ 19   Don was shocked with approximately 12,400 volts of electricity from Defendant ACSC's switchgear.

¶ 20   Plaintiffs suffered and continue to suffer economic and non-economic damages as a proximate result of the incident and Defendant ACSC's negligent acts and omissions.

## COUNT ONE:

### Negligence

¶ 21   Plaintiffs incorporate each preceding paragraph as if fully realleged herein.

¶ 22   Plaintiffs make the following allegations pending completion of discovery.

¶ 23   Defendant ACSC owed a general duty of care to act in a reasonably prudent manner to avoid injuring others. Defendant ACSC assumed a duty of care to act reasonably and prudently to protect Don while Don was working at the factory. Defendant ACSC owed a duty to follow all its policies, procedures, and practices to manage and control its electrical systems in a reasonably safe manner. Defendant ACSC owed a duty to follow all industry standards to manage and control its electrical systems in a reasonably safe manner. Defendant ACSC owed a duty of care to isolate and de-energize the subject switchgear before Don began working.

¶ 24   Defendant ACSC breached its duties of care when it negligently:

    a. Failed to implement, maintain, or enforce adequate isolation and de-energization policies,

b. Failed to implement or maintain accurate and comprehensible diagrams for the factory's electrical system,

c. Failed to implement or maintain accurate and comprehensible equipment labeling for the factory's electrical system

d. Failed to train its employees on the proper methods for isolating and de-energizing the subject switchgear,

e. Failed to isolate and de-energize the subject switchgear before Don started working,

f. Misrepresented to Don that the subject switchgear was isolated and de-energized,

g. Failed to warn Plaintiffs that the switchgear was or could still be energized, and

h. Committed other negligent acts or omissions not specifically outlined herein but will be shown at trial.

¶ 25   The incident and Plaintiffs' injuries were a proximate result of Defendant ACSC's reckless, careless, and negligent actions.

¶ 26   Plaintiffs suffered economic and noneconomic losses outlined below.

## DAMAGES

¶ 27   Plaintiffs incorporate each preceding paragraph as if fully realleged herein.

¶ 28   Plaintiffs make the following allegations pending completion of discovery.

¶ 29   As a direct and proximal result of Defendant ACSC's reckless, careless, and negligent actions, <u>Don</u> has suffered and will continue to suffer economic and noneconomic damages as defined by § 32-03.2-04 of the North Dakota Century Code, in an amount to be determined at trial, but not less than $75,000.

¶ 30   As a direct and proximal result of Defendant ACSC's reckless, careless, and negligent actions causing personal injuries to Don, <u>Beverly</u> has suffered and will continue to suffer loss of consortium and companionship as defined by § 32-03.2-04 of the North Dakota Century Code, in an amount to be determined at trial, but not less than $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. Judgement against Defendant ACSC and in favor of Plaintiffs,

2. Don be awarded past and future <u>economic damages</u> and <u>noneconomic damages</u> in a reasonable amount to be shown and proven at trial, but not less than $75,000,

3. Beverly be awarded past and future <u>noneconomic damages</u> for loss of consortium and companionship in a reasonable amount to be shown and proven at trial, but not less than $75,000,

4. Plaintiffs be awarded interest on their damages at the statutory rate,

5. Plaintiffs be awarded costs and disbursements,

6. Plaintiffs be awarded attorney fees to the extent allowed by law, and

7. Any other relief the Court deems just and equitable.

Dated this 14th day of January 2025.

                    **SCHWEIGERT, KLEMIN, & McBRIDE, P.C.**
                    116 North 2nd Street
                    P.O. Box 955
                    Bismarck, North Dakota 58502-0955
                    P: (701) 258-8988
                    F: (701) 258-8486
                    **Attorneys for Plaintiffs**

By: _____
             David D. Schweigert
             ND State Bar ID# 05123
             dschweigert@bkmpc.com

             Cody J. Nichols
             ND State Bar ID# 09141
             cnichols@bkmpc.com

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial with the maximum number of jurors allowed by law.

Dated this 14th day of January 2025.

                **SCHWEIGERT, KLEMIN, & McBRIDE, P.C.**
                116 North 2nd Street
                P.O. Box 955
                Bismarck, North Dakota 58502-0955
                P: (701) 258-8988
                F: (701) 258-8486
                **Attorneys for Plaintiffs**

By:    _____
                David D. Schweigert
                ND State Bar ID# 05123
                dschweigert@bkmpc.com

                Cody J. Nichols
                ND State Bar ID# 09141
                cnichols@bkmpc.com